Steven H. Salomon
53405 Avenida Navarro
La Quinta, CA  92253
(760)272-7571

Victoria Salomon
55 Willow Rd
Nahant, MA  01908
(781)346-8493

FILED

07 MAY 31  PM 1: 16

CLERK
U.S. BANKRUPTCY CT.
SO. DIST OF CALIF

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | Case No.: 05-14843-JM7 |
| Steven H. Salomon and Victoria Salomon, | Chapter 7 |
| Debtors. | Adv. Pro No. 07-90015-JM |
| Gerald H. Davis, Chapter 7 Trustee | OPPOSITION TO APPLICATION OF GERALD H. DAVIS, CHAPTER 7 TRUSTEE, FOR ENTRY OF DEFAULT JUDGEMENT. |
| Plaintiff, | |
| vs. | DATE: June 28, 2007 |
| | TIME  10:00 a.m. |
| Steven H. Salomon and Victoria Salomon, | DEPT: 1 |
| Defendants. | |

Steven H. Salomon and Victoria Salomon, (hereinafter referred to as "Defendants")

respectfully submit their Opposition to the Application of Gerald H. Davis, Chapter 7

Trustee, ("Plaintiff") for Entry of Default Judgment.

At the time the Adversary Complaint was filed, January 16, 2007, Defendants were

without legal counsel and had no access to legal counsel due to the fact that they

were financially unable to secure counsel.

As a result, Defendants were without resources or knowledge and were unable to proceed

with a defense. Since that time, Defendants have educated themselves with the legal

process and are now prepared to offer a defense Pro se.

In addition, the Application by the Plaintiff is filled with inaccuracies, ambiguities and false statements.  Also, there was a rush to file the Complaint.  Trustee did not examine the corrected transcripts of the Defendants Rule 2004 Examination of Steven H. Salomon and Victoria Salomon, conducted January 2 and 3, 2007.

The Trustee has made false statements, inaccuracies and ambiguities in his Application for Default including the following:

(1) The Farms Golf membership is construed by the Plaintiff to be a personal asset of the Defendants.  During the Rule 2004 examination, evidence was provided to the Trustee that showed this membership was not a personal asset.  Evidence provided included cancelled checks that proved that the membership to The Farms was paid for by Client Benefit Insurance Services, a business owned by Jeff Welty; and that any proceeds received from The Farms would be the property of Client Benefit Insurance Services.  This membership was disclosed to our bankruptcy attorney, Jeffrey Schreiber, Pacific Law Center.  Mr. Schreiber indicated that this was a business asset of Client Benefit Insurance Services and not a personal asset of the Defendants; therefore it was not listed in the original bankruptcy filing. In addition, attached is a statement from Jeff Welty, owner of Client Benefit Insurance Services, confirming his position on this matter.

(2) In reference to the allegation that Defendants misrepresented the amount of proceeds received from the sale in August 2005, of their residence (page 11, Line 17 of the Application) the discrepancy comes from the fact that the Defendants listed the net proceeds of the sale, and not the gross proceeds of the sale; which is listed on Schedule D of their 2004 personal tax return.  This is the actual net proceeds according to tax law.  This amount was entered on the original Bankruptcy Petition by Pacific Law Center as they had access and copies of Defendants tax returns.

2

(3)   In reference to Page 10, Line 10, Defendants did not misrepresent their income for the years 2003, 2004 and 2005.  Defendants provided copies of their completed and filed 2003 and 2004 personal income tax returns to Pacific Law Center in the preparation of the Bankruptcy Petition.  It is clear that this is an error and oversight in the final preparation and presentation of the Petition by Defendants legal counsel, Pacific Law Center, and was probably due to the rush to file by the October 15, 2005 deadline.  Defendants were unaware of this error and feel that if the Trustee had properly reviewed the Petition, he would have inquired on this issue and would have been provided with the tax returns before the discharge was granted; thereby eliminating this allegation of misrepresentation.

(4)   Re: Page 11, Line 7: When filing the Bankruptcy Petition, Defendants answered the question: "did you transfer any property" Answer No. This answer was based on the Defendants understanding of "Transfer" to mean a conveyance of a right, title, or interest in real or personal property from one person or entity to another.  Defendants did not intend any misrepresentation in this matter; the membership noted had been listed for sale several months prior to the actual sale taking place and long before any intention of filing a Bankruptcy Petition.  The reason this membership was listed for sale is that Defendants had moved from the area and no longer utilized the membership.

(5)   RE: Page 19, Line 26: Defendants did not under value the jewelry noted. Defendants paid $1346.00 for the wedding rings; it was reasonable to assume that at the time of the filing the Bankruptcy Petition the rings were not valued at any more than $1000.00.  The Defendants homeowners' policy contained a standard replacement value of jewelry in the amount of $2500.00.  The Defendants did not list this jewelry separately and were

unaware of their obligation to report such several months after their

Bankruptcy Petition had been discharged.

(6) RE: Page 6, Line 13:  This statement is false.  Defendants noted in their

Petition that they had household furnishing in the amount of $2500.00 and

a big-screen television valued at $2000.00.  The combined value of these

two items is $4500.00; all property was sold by the Defendants for a

total of $3000.00.  Re: Page 6, Line 17; this represents another

inaccuracy by the Plaintiff.

(7) RE: Page 6, Line 1: This statement is false.  The Defendants checking

account at Canyon National Bank was stated at zero in that there was no

money available as checks had been written against the funds noted in the

account of $974.49; and noted in the Defendants check register.  The

checks written had not cleared the bank on the date the petition was

filed, but the money in this account had been accounted for by virtue

checks that had been written against those funds to pay household bills.

(8) RE: Page 13, Line 8:  This statement is false.  Kris Schulte, Emory

Brazelle and Kevin Connors are not bona-fide creditors of the Defendants.

(9) RE: Page 13, Line 21: this statement is false.  The Defendants did not

lie or misrepresent their statement of financial affairs.  All bona-fide

creditors were listed to the best of their knowledge.

(10) Re: Page 7, Line 6: This statement is a complete falsehood.  The

Defendants did not conceal, sell or transfer any personal property.

There is no evidence of such concealment, sale or transfer of property by

the Defendants other than the sale of household furnishings noted in

paragraph 6.  The Defendants corrected the issue surrounding the alleged

financial statement to CNB in their 2004 Examination; however, this is

another example of the Trustee not reviewing or acknowledging the

corrections to Rule 2004 Examinations.

4

(11) RE: Page 12, Line 26: This is a complete falsehood. It was impossible for the Debtors to identify this lawsuit as the 341(a) Questionnaire was filed on November 15, 2005 and the Greenfield v. Salomon, et al., Case Number BC 344756 was filed on December 15. 2005.  Further, Steven Greenfield is identified as an investor in the business entities with the Defendants. Mr. Greenfield is not a bona-fide creditor and therefore was not included in the Statement of Financial Affairs or in the Meeting of Creditors Questionnaire.

(12) RE: Page 12, Line 20: This statement is false.  The clock referenced was purchased by Defendants parents in 1990 in the amount of $600.00 It was the property of Janet Welty Keyes at the time of the filing the Bankruptcy Petition.  Occasionally the item was stored in her children's homes as she traveled in motor home and was in the process of relocating. The estimated value of the clock at the time of the Bankruptcy Petition was approximately $75.00 and was given to Defendants brother, Jeff Welty by his mother, Janet Welty Keyes.  This correction was made in the Defendants Rule 2004 Examination transcript; again this correction was ignored by the Trustee.

(13) RE: Page 6, Line 26: The Wells Fargo account was not listed as it was virtually "closed".  There was no activity within one year of the filing of the Bankruptcy Petition.  The money noted in the account on August 26, 2004 was used in full as a down payment on the purchase of Defendants home;  789 Turtle Point Way, San Marcos, CA on or about September 10, 2004. The account had not monies and was not an asset.

(14) Re: Page 5, Line 1: This is a complete falsehood.  See paragraph 1.  In addition, there is no mention of The Farms membership in the alleged personal financial statement which was corrected in the Defendants Rule 2004 Examination and corrections were ignored by Trustee.

1   Based upon all of the above objections and explanations, it is clear that the

2   Defendants did not intentionally and/or fraudulently misrepresent themselves in the

3   filing of their Bankruptcy Petition.  It is also clear that the Trustee did not review

4   the Petition thoroughly and accurately as most of the oversights and omissions would

5   have been discovered by the Trustee's review prior to the decision to discharge the

6   Defendants bankruptcy.  If the Trustee had conducted a complete review of the

7   Defendants Petition and through the normal course of examination requested the

8   documents that were mistakenly omitted, Defendants legal counsel would have been

9   notified and all requests immediately provided to the Trustee; thus eliminating the

10  allegations and charges of fraud. These were clearly oversights and mistakes made in

11  the filing of the Bankruptcy Petition and not an attempt to deceive the Court.

12  Further, the Defendants did indeed provide income tax returns to their counsel in the

13  filing of the Petition; it is not understood why they were not included in the final

14  filing of the Petition or why the Trustee did not request an explanation or copies of

15  income for 2003 and 2004.  The Defendants believe that if the Trustee had requested

16  the obvious missing items; tax returns for the years 2003 and 2004 and examined the

17  Schedule "D" of the tax return, Trustee would have known that the correct amount of

18  proceeds from the sale of the La Quinta property was indeed reported accurately; again

19  eliminating another charge against the Defendants of misrepresentation.  Defendants

20  believe that they were not afforded an opportunity to meet with the Trustee and

21  provide additional documentation or omissions that were a result of honest mistakes in

22  the final filing of the Petition.

23

24  Defendants feel that if the Trustee had given adequate time and review of their

25  Petition, they would have received legal representation by the attorney and law firm

26  that filed the petition and further believe this would have ultimately satisfied the

27  Trustee in all areas of concern and allegation of wrong doings.

28

1  Rush to Judgment: Defendants believe that if the Trustee had reviewed the Rule 2004

2  Examinations and corrected transcripts, many of the allegations would have been

3  answered.  Instead, there was a rush to judgment by the Trustee by filing the Entry

4  for Default Judgment merely 12 days after the Rule 2004 Examination.  Defendants

5  requested a meeting with the Trustee following the Rule 2004 Examination and were

6  denied a meeting and any communication by Trustee's counsel, Alan Nahmias.

7  Additionally, the Trustee was not present at the Rule 2004 Examination of Steven H.

8  Salomon.  It is clear to the Defendants that the Trustee was biased in his opinion of

9  this case and did not take into consideration the corrected testimony of the

10  Defendants from the Rule 2004 Examinations.

11

12  While there has been nothing mentioned about the Defendants background and fiscal

13  responsibility; Defendants believe it is important to note that Defendants have been

14  exemplary citizens and tax payers of the United States for over 30 years.  They have

15  the utmost respect and regard for the Courts and have never acted in anyway that would

16  be considered indifferent or without regard for the seriousness of this case.

17

18  The Defendants have been financially and fiscally responsible citizens for over 30

19  years in the State of California and Nevada.  They have filed and paid their taxes,

20  maintained businesses and homes in California for over 25 years, and have never had

21  any problems with credit until their businesses in the athletic shoe industry began to

22  collapse. This, and only this business venture is what forced them into bankruptcy.

23

24  Prior to the filing of their Petition,  Defendants had always maintained an excellent

25  credit history and prided themselves on earning an honest living and paying their

26  obligations on time, which established a respectable credit history that spans 30

27  years.  Defendants have employed and created jobs for over 65 people in the last 23

28  years; have maintained excellent relationships with banks and financial institutions

and are attempting to get back on their feet as a result their failed business and resulting Bankruptcy.

Finally, and most importantly, the Defendants wish to clear their name of the charges and alleged wrong doings that the Trustee has presented in the Application to Revoke.

The Defendants did not, and have not at anytime attempted to conceal assets or properties, misrepresent themselves, or act with reckless disregard for the Court. In fact, the Defendants have been, and continue to be upstanding, tax paying, and law abiding citizens that are being wrongly accused of fraud. Defendants have been forthright and honest in all areas of their Petition. Oversights that have been discovered are honest errors and can be explained to the Court.

In addition, the American Justice System is based upon the principal that you are innocent until proven guilty. The Defendants have not had an opportunity to clear their name of these charges due to their lack of financial ability to hire counsel and properly defend themselves. They are now capable of doing so now, pro se and ask that the judgment be set aside so that they may be heard on this case and clear their name of all allegations and charges.

In this Opposition to the Application for Entry of Default Judgment, The Defendants have answered every complaint listed accurately and honestly. Defendants pray upon the Court to deny the Application for Entry of Default Judgment.

Defendants pray upon the court to set aside this Entry of Default Judgment so that the Defendants are allowed an opportunity to present their defense and clear their name of all charges. Entry of this judgment would cause irreparable damage to the Defendants credit history and business reputation for the rest of their lives.

WE DECLARE THE FOREGOING TO BE TRUE AND CORRECT UNDER THE PENALTY OF PERJURY.

Dated this May 30, 2007

STEVEN H. SALOMON

VICTORIA SALOMON
PRO SE

## DECLARATION OF STEVEN H. SALOMON AND VICTORIA SALOMON

We, Steven H. Salomon and Victoria Salomon, Defendants, declare:

1.     We are the Debtors and Defendants in Bankruptcy Case No. 05-1443-JM7 and Adversary Proceeding No. 07-90015-JM, respectfully.

2.     If we were to be called s witnesses, we could and would testify to the following facts which are personally known to us.

3.     The Farms Golf membership was not our asset; it was the property of Client Benefit Insurance Services. (Exhibit A, statement by Jeff Welty, President Client Benefit Insurance Services)

4.     The proceeds from the sale of the La Quinta property were accurately and correctly reported on Schedule "D" of the 2004 personal tax return. (See Exhibit ⌒)

5.     All income for 2003 and 2004 was correctly reported on our personal tax returns which we provided to Pacific Law Center in the preparation of the Bankruptcy Petition. (Exhibit B checklist from Pacific Law Center).
Personal tax return for 2005 was not completed or filed at the time of the filing of the Bankruptcy Petition.

6.     We paid $1346.00 for wedding rings. (Exhibit C receipt for rings).

7.     We listed household furnishings in the amount of $2500.00 and separately listed a big-screen television in the amount of $2000.00 in the Bankruptcy Petition.  Most of the household furnishings and the television were sold by the Defendants for a total of $3000.00; The combined value of these items was $4500.00, which is $1500.00 less than the amount received by the Defendants.

8.     Canyon National Bank account balance was at zero when the Bankruptcy Petition was filed due to the outstanding checks that had been

1

1      recorded in the Defendants check register and had not yet cleared the

2      bank.

3    9.    Kristopher Schulte, Emory Brazelle and Kevin Connors are not bona-

4      fide creditors of the Defendants.

5    10.   We did not intentionally lie or misrepresent our Statement of

6      Financial Affairs.  All bona-fide creditors and assets were listed to

7      the best of our knowledge.

8    11.   Regarding Steven Greenfield; Mr. Greenfield was an investor in

9      Salomon & Salomon, LLC and Up In Smoke, Inc.  When Salomon & Salomon,

10     LLC became insolvent, Mr. Greenfield vowed to "get us".  From this

11     point on, Mr. Greenfield began an onslaught of accusations,

12     allegations, falsehoods and legal proceedings against us, which were

13     carried out by his legal counsel, Alan Nahmias.

14    12.   Mr. Greenfield claims to be a creditor; however there is no evidence

15     to support this claim. In fact, the entire spirit of Mr. Greenfield's

16     litigation is one of revenge and vindictiveness.  This can be

17     evidenced by a voice memo transcript from Mr. Greenfield to our

18     former account Scott Taylor, CPA (Piercy, Bowler, Taylor & Kerns) see

19     Exhibit "D".

20    13.   Mr. Greenfield has spent enormous sums of money as evidenced in his

21     statement, see Exhibit "D", in his constant and malicious pursuit to

22     ruin our personal and financial lives, causing extreme grief and

23     suffering.

24    14.   Mr. Greenfield is communicating to business associates and personal

25     friends of ours that he intends to "ruin us and we will be going to

26     jail."  See Exhibit "D".

27    15.   Alan Nahmias is the counsel for Steven Greenfield.  Coincidentally,

28     Mr. Nahmias is the Special Counsel for the Trustee.  As evidenced by

      Mr. Greenfield's attitude toward us, and the large amounts of money

2

1    Mr. Greenfield has paid to Mr. Nahmias, it is impossible for Mr.

2    Nahmias to represent the Trustee without prejudice.

3    16.    Mr. Nahmias used the Greenfield Civil Case No. BC 344756 to subpoena

4    records from The Farms Golf Club on November 16, 2006, see Exhibit

5    "E".  In a telephone conversation with me, Steven Salomon on or about

6    January 15, 2007, Mr. Nahmias admitted to me that because of the Stay

7    on Civil Case No. BC 344756, in order to satisfy Mr. Greenfield he

8    had to provide evidence to the Trustee in order to start a revocation

9    proceeding against us.

10    17.    Mr. Nahmias indicated extreme prejudice against us in a phone

11    conversation with me, Steven Salomon, on or about March 28, 2007 when

12    Mr. Nahmias stated "I'm tired of fucking around with you".

13    18.    Mr. Nahmias' extreme prejudice and loyalty to Mr. Greenfield, who is

14    paying all legal fees to Mr. Nahmias, cannot be unbiased in

15    representation of the Trustee.

16    19.    The clock has virtually no value and was not our asset.

17    20.    The sale of membership to The Plantation Golf Club was completed

18    prior to the filing of the Bankruptcy Petition.

19    21.    The Wells Fargo Account balance of $39,325.69 in August 2004 was over

20    1 year prior to the filing of the Bankruptcy Petition. This account

21    was closed by virtue of non activity after September 30, 2004.  It

22    was an inactive for over 12 months, without funds, and therefore was

23    not listed as an asset.  The funds in this account in 2004 were paid

24    In the form of a down payment in on or about September 10, 2004 to

25    purchase our home at 789 Turtle Point Way, San Marcos, CA .

26

27

28

1    We, declare under penalty of perjury under the laws of the United States that

2  the foregoing is true and correct.

3    Executed this 29th. Day of May, 2007 at La Quinta, California.

4

5

6  _____    _____

7  Steven H. Salomon                    Victoria Salomon

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

Jeff Welty
34018 Turtle Creek St.
Temecula, CA. 92592

*EXHIBIT A*

May 25, 2007

To whom it may concern,

I am writing to clarify certain issues involving myself with the Salomon bankruptcy.

I purchased a golf club membership through my company CBIS, to be used by Steve Salomon as a means to generate business clients. The agreement was that I would cover the cost of the membership and Steve would actively prospect for new insurance clients while at the club. I paid one half of the initiation fee and then agreed to pay the monthly dues. The membership was established in Steve's name as the corporate membership rate was a much higher expense.

It was our agreement that this would be considered my asset and at such time as the membership was sold, I would receive back the monies paid. At the time the membership was sold, Steve Salomon was under financial duress and had no money for living expenses or personal bills. I agreed that Steve could keep the proceeds from the sale for personal expenses and that he could repay me when he straightened out his finances.

If there are any questions regarding these matters that I can assist in, please let me know.

Respectfully,

Jeff Welty

05-14843-JM7

# CHAPTER 7 DOCUMENTATION CHECKLIST

_✓_ 1.　Copy of full federal tax return (at least 1040, Schedule A and C) for the past two years.

_N/A_ 2.　Taxes unpaid?  If so, what taxing entity, for which years, and amount due for each.  Provide copies of statements of amounts due.

_✓_ 3.　Tax returns not filed?  If so, for which years?　2005

_✓_ 4.　Copy of vehicle loan financing/lease contract.

_✓_ 5.　Copy of vehicle loan payoff amount (total balance due if paid in full, may have to call lender.)

_✓_ 6.　Vehicle loan/lease past due?  If so, for which months?

_✓_ 7.　Copy of vehicle registration.

_✓_ 8.　Copy of insurance policy declaration page.  (**Not** the insurance card.)

_____ 9.　Vehicle　Make　2004　　　　2001-MERCEDES SS00
　　　　　　　　　Model　NISSAN　　　2004-NISSAN MURANO
　　　　　　　　　Year　04
　　　　　　　　　Mileage　24500
　　　　　　　　　Air ✓ Auto/Manual　　　Tape/CD
　　　　　　　　　PW ✓ PS ✓ ABS ✓ V6/V8 V6
　　　　　　　　　4WD/2WD 2WD Other(s)_____

_✓_ 10.　(a) Copy of three (3) most recent pay stubs, or if self employed, profit and loss statement and bank statements for each of the three (3) prior months.

　　　　(b) Direct deposit?  Copy of bank statements showing the direct deposit; especially if social security, retirement, pension, IHSS.

_✓_ 11.　Any student loans?  If so, for each the name of the lender, total still due, payment amount, if deferred, reason for deferral and length of deferral.

_✓_ 12.　Own real property/mobile home?  If so, need:

　　　　　　_✓_　Written evaluation for property-appraisal
　　　　　　　　www.domania.com - "free not always available
　　　　　　　　www.electronicappraiser.com - cost $4.99.  Choose comparison sheet.

　　　　　_N/A_　Copy of Housing and Community Development Registration (mobile home only)

　　　　　　_✓_　Pay off amount for each loan/mortgage (total balance due if paid in full)

_✓_ 13.　Mortgage(s) past due?  If so, for which months?

_✓_ 14.　Copies of statements from creditors showing balances due, account numbers and addresses (i.e. credit cards, collection agencies, loan(s)/lease(s), etc.)

_N/A_ 15.　Receive/pay Alimony or Child Support?  If so, copies of Court Orders.



**KANTOR DIAMOND**
**C O M P A N Y**
**DIAMONDS AT DEALERS' PRICES®**

35-688 Cathedral Canyon Dr. Ste 105
Cathedral City, CA 92234
(760) 328-2587 Fax (760) 202-7817

**INTERNET** www.kantordiamond.com
**TOLL FREE:** 1-888-CARATS1  (1-888-227-2871)

*EXHIBIT C*

Sold To: STEVE AND VICKI SALOMON
　　　　 80327 OAK TREE
　　　　 LAQUINTA, CA  92253

Invoice No: 7000415

Date: 12/23/02

Page: 1

Ship To: 80327 OAK TREE
　　　　 LAQUINTA, CA

Phone No:(760) 272-7571

Cust. Order #:　　　　　　　　　　Salesperson: #2  — David

| Product Code | Item Description | Qty | Your Price List Price | Amount |
|---|---|---|---|---|
| D6-840-1 | 12Rd/6Princess-Cut Diamond | 1 | 1346.00 | 1346.00* |
| G/SI1 14KW/G | SEE COMMENTS FOR DESCRIP. | | 2800.00 | |
| .90 | | | *REPLACEMENT VALUE* | |
| REPAIR | Shop work charges | 1 | 80.00 | 80.00* |
| | | | 80.00 | |

SET CLIENT'S STONE AND SIZE TO 6.75

| APPRAISAL: ☐Y ☐N | Delivered: ☐Y ☐N |
|---|---|
| To Mail: ☐Y ☐N | Date: |

• All sales are final. Exchanges within 30 days, gladly.
• All layaways are for 90 days only. All deposits are non-refundable. Merchandise may not be claimed after 1 year.
• **Money Back Guarantee:** Within 30 days of purchase, Kantor Diamond Company will gladly refund your money if the diamond or diamond jewelry described above does not appraise for more than the purchase price. Appraisals must be in writing from an independent GIA graduate appraiser.
• All sales final on special order and custom makeup.
• All diamond merchandise covered by our exclusive 10 year warranty!
• Most colored gemstones are enhanced in some way (oiling/heat treatment and irradiation are most likely in colored gemstones).

| | |
|---|---|
| Sub-Total: | 1426.00 |
| Shipping: | 0.00 |
| Tax [ 7.75]: | 110.52 * |
| Total: | 1536.52 |
| Visa / MC : | 1536.52 |
| Amount Paid: | 1536.52 |
| Amount Due: | 0.00 |
| Change: | 0.00 |

CLIENT SIGNATURE _____  DATE____/____/____

# PIERCY BOWLER
# TAYLOR & KERN

### Certified Public Accountants
### Business Advisors



EXHIBIT D

## MEMORANDUM

| Date: | 01-31-07 |
|---|---|
| To: | **Hammon Eggit, LLC file** |
| Cc: | |
| From: | Scott Taylor |
| Client Code: | 4792 |
| Subject: | **Call from Steve Greenfield re: Invoice for Hammon Eggit, LLC** |

Confidential: accountant-client privileged communication; attorney-client privileged communication;
attorney work-product privileged communication.

Hello Scott. My name is Steve Greenfield you had written me a letter on January 18th I guess. It didn't arrive to my place until the last couple of days. I scanned your letter and sent it to my attorneys. Not because I am doing anything with you, but the Salomon's have bankrupted this business completely and for the last year I have been in litigation against them in suing them civilly for stealing and bankrupting a business and fraud. It's gotten a lot worse for them. They filed ←2 bankruptcy and I went after them in bankruptcy court and my attorneys have probably now accomplished overturning the entire bankruptcy. They owe over two and a half million or three million dollars in bankruptcy and it's going to be open for anybody to go get after, when I'm done with them. The bankruptcy trustee is probably going to recommend federal district attorney to look at it for bankruptcy fraud which is prevalent and income tax evasion. They basically have also committed federal crimes against some of the banks. They put in false documents, borrowed money, didn't pay off the company's new balance bills and inventory and then took the proceeds. As a person who was involved with them, they didn't even tell the bank that I was involved in this business at all with him. He had total control of the checkbooks and all. He's going to jail in my opinion. For him to be in the midst he's at and then call you and say send me this bill is almost, it's not funny on your part but it's certainly not on mine either. Listen, you're out of town today. I will be able to call you tomorrow probably or the next day, I'll give you a call we'll talk about this but this is not my bill, never was. As far as the Salomon's are concerned they belong where they are going to go I think. It's just really sad, for me too I'm down, they stole over a million dollars from me in these businesses. Just flagrant fraud, that's all I can tell you. I will be back to you and call you. I am a good person and I'm not trying to hide from anything, but this is not my bill and you know I think basically you should try and file a claim against them. Will you ever get paid? I'll never get← paid, but I don't know what else to do. I don't know what else to say my personal feelings about these people are beyond belief okay. I will call you tomorrow, we'll go through it. I don't want bring

This memo contains confidential information, which may be privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not copy, use, or distribute it. If you have received it in error, please advise Piercy Bowler Taylor & Kern immediately by telephone or facsimile and return it promptly by mail

6100 Elton Avenue, Suite 1000, Las Vegas, NV 89107-0123 Phone 702.384.1120 Fax 702.870.2474

PBTK Memorandum

my attorney in on this I've paid him $150,000 already to do all this shit, but if he thinks it's necessary. I called him yesterday and he said "Why don't you just call the guy and tell him what's going on? And if you need me to do something I'll do it." I left it at that. Thanks Scott.

# United States Bankruptcy Court

### SOUTHERN  District Of CALIFORNIA

EXHIBIT E

In re: STEVEN H. SALOMON and VICTORIA Y. SALOMON,

_____ Debtor

STEVEN B. GREENFIELD, an individual

_____ Plaintiff

STEVEN H. SALOMON and VICTORIA Y. SALOMON,

_____ Defendant

To: CUSTODIAN OF RECORDS OF THE FARMS GOLF CLUB

**SUBPOENA IN AN ADVERSARY PROCEEDING**

Case No.¹ 05-14813-JM7

Chapter  7

Adv. Proc. No.¹ 06-90083-JM

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date and time specified below to testify in the above adversary proceeding.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above adversary proceeding.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

(Please see Attachment 1.)

| PLACE | DATE AND TIME |
|---|---|
| Plotkin, Rapoport & Nahmias 16633 Ventura Boulevard, Suite 800 Encino, CA  91436 | November 30, 2006 11:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this adversary proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed. R. Civ. P. 30(b)(6) made applicable in adversary proceedings by Rule 7030, Fed. R. Bankr. P.

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorneys for Plaintiff Steven B. Greenfield | November 16, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Alan I. Nahmias, Esq., Plotkin, Rapoport & Nahmias
16633 Ventura Boulevard, Suite 800, Encino, CA 91436
(818) 906-1600

¹ If the bankruptcy case or the adversary proceeding is pending in a district other than the district in which the subpoena is issued, state the district under the case number or adversary proceeding number.

B256

8587569

**PROOF OF SERVICE**

1

2  STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3      I am employed in the County of Los Angeles, State of California. I am over the age of 18
4  and not a party to the within action. My business address is 16633 Ventura Boulevard, Suite 800,
   Encino, California 91436-1836.

5      On November 16, 2006, I served the foregoing document described as:

6  SUBPOENA IN AN ADVERSARY PROCEEDING – ADDRESSED TO CUSTODIAN OF
7  RECORDS OF THE FARMS GOLF CLUB

8  on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope
   addressed as follows:

9  Frederick C. Phillips
   Phillips, Haskett & Ingwalson
10  701 "B" Street, Suite 1190
   San Diego, CA 92101

11

12    X    (BY MAIL) I deposited such envelope with postage thereon fully prepaid in the United
           States mail at Encino, California.

13    ___   (BY PERSONAL SERVICE) I delivered such envelope by hand to the offices of the
14          addressee.

15    ___   (BY FACSIMILE TRANSMISSION) I caused to be transmitted to the following
           party(ies) at the telephone numbers listed:

16    ___   (STATE) I declare under penalty of perjury under the laws of the State of California that
17          the above is true and correct.

18    X    (FEDERAL) I declare that I am employed in the office of a member of the Bar of this
           Court at whose direction the service was made.

19  Executed on November 16, 2006, at Encino, California.

20

21

22                                      JACQUELINE DALE

23

24

25

26

27

28

Adv. Pro. No. 06-90083-JM

Attachment to:

## SUBPOENA IN AN ADVERSARY PROCEEDING

Attachment 1.

**YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents:

1. Any and all documents evidencing membership in The Farms Golf Club by Steven Salomon and/or Victoria Salomon.

2. Any and all documentation evidencing any sale or transfer of any membership in The Farms Golf Club by Steven Salomon and/or Victoria Salomon, including but not limited to any sale or transfer agreement, and amount and form of payment received for the sale of such membership.

**SCHEDULE D**
(Form 1040)

Department of the Treasury
Internal Revenue Service  (99)

**Capital Gains and Losses**

► Attach to Form 1040.  ► See Instructions for Schedule D (Form 1040).
► Use Schedule D-1 to list additional transactions for lines 1 and 8.

OMB No. 1545-0074

**2004**

12

| Name(s) shown on Form 1040 | Your social security number |
|---|---|
| Steve H. and Victoria Y. Salomon | 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 |

## Part I  Short-Term Capital Gains and Losses — Assets Held One Year or Less

| | (a) Description of property (Example: 100 shares XYZ Co) | (b) Date acquired (Mo, day, yr) | (c) Date sold (Mo, day, yr) | (d) Sales price (see instructions) | (e) Cost or other basis (see instructions) | (f) Gain or (loss) Subtract (e) from (d) |
|---|---|---|---|---|---|---|
| 1 | Personal Residence La Quints, CA | 3/15/04 | 8/02/04 | 420,000. | 369,939. | 50,061. |
| | Section 121 Exclusion | | | | | -50,061. |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 2 | Enter your short-term totals, if any, from Schedule D-1, line 2 . . . | 2 | | | |
| 3 | **Total short-term sales price amounts.** Add lines 1 and 2 in column (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 | 420,000. | | |
| 4 | Short-term gain from Form 6252 and short-term gain or (loss) from Forms 4684, 6781, and 8824 . . . . . . . . . . . | | | 4 | |
| 5 | Net short-term gain or (loss) from partnerships, S corporations, estates, and trusts  from Schedule(s) K-1 . . . . | | | 5 | |
| 6 | Short-term capital loss carryover. Enter the amount, if any, from line 8 of your **Capital Loss Carryover Worksheet** in the instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 6 | |
| 7 | **Net short-term capital gain or (loss).** Combine lines 1 through 6 in column (f) . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 7 | |

## Part II  Long-Term Capital Gains and Losses — Assets Held More Than One Year

| | (a) Description of property (Example: 100 shares XYZ Co) | (b) Date acquired (Mo, day, yr) | (c) Date sold (Mo, day, yr) | (d) Sales price (see instructions) | (e) Cost or other basis (see instructions) | (f) Gain or (loss) Subtract (e) from (d) |
|---|---|---|---|---|---|---|
| 8 | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 9 | Enter your long-term totals, if any, from Schedule D-1, line 9 . . . . | 9 | | | |
| 10 | **Total long-term sales price amounts.** Add lines 8 and 9 in column (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 | | | |
| 11 | Gain from Form 4797, Part I; long-term gain from Forms 2439 and 6252; and long-term gain or (loss) from Forms 4684, 6781, and 8824 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 11 | 10,446. |
| 12 | Net long-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 . . . . . | | | 12 | |
| 13 | Capital gain distributions. See instrs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 13 | |
| 14 | Long-term capital loss carryover. Enter the amount, if any, from line 13 of your **Capital Loss Carryover Worksheet** in the instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 14 | |
| 15 | **Net long-term capital gain or (loss).** Combine lines 8 through 14 in column (f). Then go to Part III on page 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 15 | 10,446. |

BAA **For Paperwork Reduction Act Notice, see Form 1040 instructions.**

Schedule **D** (Form 1040) 2004

FDIA0612L  11/02/04

1292

Schedule **D** (Form 1040) 2004   Steve H. and Victoria Y. Salomon                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          Page **2**

| **Part III** | Summary |

**16** Combine lines 7 and 15 and enter the result. If line 16 is a loss, skip lines 17 through 20, and go to line 21. If a gain, enter the gain on Form 1040, line 13, and then go to line 17 below . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**   10,446.

**17** Are lines 15 and 16 **both** gains?

[X] **Yes.** Go to line 18.

[ ] **No.** Skip lines 18 through 21, and go to line 22.

**18** Enter the amount, if any, from line 7 of the **28% Rate Gain Worksheet** in the instructions . . . . . . . . . . . . . . . ▶ **18**   0.

**19** Enter the amount, if any, from line 18 of the **Unrecaptured Section 1250 Gain Worksheet** in the instructions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ **19**   10,446.

**20** Are lines 18 and 19 **both** zero or blank?

[ ] **Yes.** Complete Form 1040 through line 42, and then complete the **Qualified Dividends and Capital Gain Tax Worksheet** in the instructions for Form 1040. **Do not** complete lines 21 and 22 below.

[X] **No.** Complete Form 1040 through line 42, and then complete the **Schedule D Tax Worksheet** in the instructions. **Do not** complete lines 21 and 22 below.

**21** If line 16 is a loss, enter here and on Form 1040, line 13, the **smaller** of:

- The loss on line 16 or
- ($3,000), or if married filing separately, ($1,500) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

**Note.** When figuring which amount is smaller, treat both amounts as positive numbers.

**22** Do you have qualified dividends on Form 1040, line 9b?

[ ] **Yes.** Complete Form 1040 through line 42, and then complete the **Qualified Dividends and Capital Gain Tax Worksheet** in the Instructions for Form 1040.

[ ] **No.** Complete the rest of Form 1040.

Schedule **D** (Form 1040) 2004