Alan I. Nahmias, Esq., State Bar No. 125140
Scott H. Noskin, Esq., State Bar No. 164923
**PLOTKIN, RAPOPORT & NAHMIAS**
16633 Ventura Boulevard, Suite 800
Encino, California 91436-1836
(818) 906-1600 Telephone
(818) 907-9261 Facsimile

Special counsel for Chapter 7 Trustee
GERALD H. DAVIS

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>STEVEN H. SALOMON and VICTORIA Y. SALOMON,<br><br>    Debtors.<br>──────────────────────────<br>GERALD H. DAVIS, CHAPTER 7 TRUSTEE<br><br>    Plaintiff,<br><br>v.<br><br>STEVEN H. SALOMON and VICTORIA Y. SALOMON,<br><br>    Defendants. | CASE NO. 05-14843-JM7<br><br>Chapter 7<br><br>Adv. Pro. No. 07-90015-JM<br><br>**CHAPTER 7 TRUSTEE'S REPLY TO:**<br>**1)  DEFENDANTS' REQUEST TO SET ASIDE DEFAULT; AND**<br>**2)  DEFENDANTS' OPPOSITION TO TRUSTEE'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT;**<br>**DECLARATION OF ALAN I. NAHMIAS IN SUPPORT THEREOF**<br><br>DATE:    June 28, 2007<br>TIME:    10:00 a.m.<br>DEPT.:    1 |

///
///
///
///
///
///
///

0

TABLE OF CONTENTS

I. Background and Statement of Facts ................................................... 3

II. Defendants Did Not Follow Proper Procedure in
    Requesting Their Defaults Be Set Aside ............................................. 3

III. In the Event the Court Elects to Treat Defendants' Request
     to Set Aside Their Defaults as a Formal Motion,
     the Defaults Should Not Be Set Aside ............................................... 4

   A. The Defendants' Conduct was Clearly Culpable ............................. 4

   B. The Trustee This Estate, and Its Creditors Would be
      Prejudiced if the Defaults are Set Aside ..................................... 5

   C. No Meritorious Defense .................................................................. 6

IV. Defendants Have Not Provided Sufficient Evidence to Rebut
    the Trustee's Argument for Entry of Default Judgment ..................... 6

   A. The Farms Golf Membership ......................................................... 6

   B. Sale Proceeds from Calle Hueneme Property ............................... 7

   C. Income for the Years 2003 Through 2005 ..................................... 7

   D. The Transfer and Sale of Plantation Country Club Membership ... 8

   E. Jewelry ............................................................................................ 9

   F. Household Furnishings .................................................................. 9

   G. Canyon National Bank Checking Account ................................... 9

   H. Defendants' Valuation of Furniture In Their
      Personal Financial Statement ...................................................... 9

   I. Transfer of Clock .......................................................................... 10

   J. Wells Fargo Bank Account .......................................................... 10

   K.  Personal Financial Statement .................................................... 11

V. The Debtors' Ongoing Lack of Cooperation ..................................... 11

VI. Conclusion ........................................................................................ 12

DECLARATION OF ALAN I. NAHMIAS ................................................... 13

i

# TABLE OF AUTHORITIES

**CASES**

Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.,
　375 F. 3d 922, 925-26 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Investors Thrift v. Lam, 192 F. 3d 1309 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Kistler v. Cleveland, 353 B.R. 254 (Bankr. E.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 4

Meadows v. Dominican Republic, 817 F. 2d 517 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . 4


**STATUTES**

Bankruptcy Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11 U.S.C. §727(d)(1) and (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3


**RULES**

Rule of Bankruptcy Procedure 7055 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rule of Bankruptcy Procedure 7055(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rule of Civil Procedure 55 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rule of Civil Procedure 55(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

1    Gerald H. Davis, Chapter 7 Trustee, (hereinafter referred to as "Applicant" or "Trustee") hereby submits his reply to Defendants' Opposition to Application of Gerald H. Davis, Chapter 7 Trustee, for Entry of Default Judgment ("Opposition").  In addition to opposing the Trustee's Application for Entry of Default Judgment, the Defendants, in a passing reference at the conclusion of their Opposition, have also requested this Court set aside their defaults which have been entered in this adversary proceeding.

This Reply addresses, in reverse order, the Defendants' requests that their defaults be set aside and thereafter, their Opposition to the Trustee's Application for Entry of Default Judgment, for if this Court agrees that the defaults should not be set aside as a threshold issue, there will be no basis for considering their Opposition to the Application for Entry of Judgment revoking the Debtors' discharge.

Applicant asserts that Defendants' defaults should not be set aside for the following reasons:

1. They have not filed a formal motion seeking to have their defaults set aside, nor have they complied with the Bankruptcy Rules, Local Bankruptcy Rules, or any necessary court procedures in hopes of obtaining such a result;

2. The Defendants knowingly and intentionally allowed their defaults to be entered;

3. The Trustee, this estate and its creditors will be prejudiced if the defaults are set aside; and

4. Defendants have no meritorious defense to the underlying revocation of discharge action.

In addition to Defendants' defaults not being set aside, a default judgment revoking each of the Debtors' discharges in bankruptcy should be entered against the Defendants, based upon the voluminous evidence provided in the Trustee's Application and the failure of Defendants to provide any contradictory evidence that is either competent or admissible.

///

///

///

1

This Reply is based upon the accompanying Memorandum of Points and Authorities, the attached Declaration of Alan I. Nahmias, as well as such oral and documentary evidence that may be presented before and at the time of the hearing on this matter.

Dated: June 21, 2007  PLOTKIN, RAPOPORT & NAHMIAS

By /s/ Alan I. Nahmias
 _____
 ALAN I. NAHMIAS
 Special Counsel for Chapter 7 Trustee

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**Background and Statement of Facts.**

On or about January 16, 2007, the Trustee filed an adversary proceeding against Steven H. Salomon and Victoria Y. Salomon (hereinafter collectively referred to as "Defendants" or "Debtors") seeking to revoke their bankruptcy discharges pursuant to 11 U.S.C. §727(d)(1) and (2). The Defendants were served with the adversary proceeding, had knowledge of the adversary proceeding, and despite such knowledge, intentionally elected, for more than four (4) months, not to oppose the relief sought by Applicant or otherwise enter an appearance in the adversary proceeding, going so far as to notify Applicant of their collective intention not to oppose the relief sought through this adversary proceeding.

After the deadline to respond to the Trustee's adversary proceeding passed, and after receiving notice of the Defendants' intention not to oppose it, the Trustee requested entry of default of the Defendants, whose defaults were entered on February 21, 2007. On May 14, 2007, the Trustee, after painstakingly compiling and cross referencing evidence to support every charge leveled at Defendants, filed an Application for Entry of Default Judgment against each of them.

**II.**

**Defendants Did Not Follow Proper Procedure**

**in Requesting Their Defaults Be Set Aside.**

As previously mentioned, the Debtors have not filed a formal motion to set aside their defaults, but rather, in a throwaway line at the end of their Opposition, have made that request. It is obvious that Defendants have not complied with the proper procedure for seeking to have their defaults set aside. If they seek to represent themselves before this Court, as they have apparently chosen to do, they must be held to the same standards as that of a licensed attorney.

The proper method by which a party may apply to have a default set aside is to file a formal motion with the court pursuant to Federal Rule of Civil Procedure 55(c) and Federal Rule of Bankruptcy Procedure 7055(c). <u>Investors Thrift v. Lam</u>, 192 F. 3d 1309 (9th Cir. 1999). Defendants have failed to do so. On that basis alone, their request to set aside the defaults should

1  be denied. However, in the event this Court elects to treat their Opposition, in part, as a motion to
2  set aside their defaults, Trustee submits that it still should be denied on each of the following
3  individual grounds, as well as on the collective basis of all grounds set forth below:

### III.

### In the Event the Court Elects to Treat Defendants' Request to Set Aside Their Defaults as a Formal Motion, the Defaults Should Not Be Set Aside.

Federal Rule of Civil Procedure 55, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7055, provides that a default may be entered against a party against whom a judgment for affirmative relief is sought. Rule 55(c) allows a court to set aside a entry of default for a good cause shown. The good cause analysis under Rule 55(c) considers three factors: 1) whether the defendant engaged in culpable conduct that lead to the default; 2) whether setting aside the default would prejudice the adversary; and 3) whether defendant has presented a meritorious defense. Kistler v. Cleveland, 353 B.R. 254 (Bankr. E.D. Cal. 2006), citing Franchise Holding II, LLC v. Huntington Restaurants Group, Inc., 375 F. 3d 922, 925-26 (9th Cir. 2004). The above factors are disjunctive, so therefore the bankruptcy court may decline to set aside the default based on any one of the above three factors.

**A.    The Defendants' Conduct was Clearly Culpable.**

A defendant's conduct is culpable if he has received notice of a complaint and failed to answer. Meadows v. Dominican Republic, 817 F. 2d 517 (9th Cir. 1987). As previously mentioned, not only did the Defendants have knowledge of the adversary proceeding, they notified the Trustee, through his counsel, of their intent not to contest the adversary proceeding. A true and correct copy of the February 16, 2007 letter from Defendants' counsel at the time to the Trustee's counsel is attached as Exhibit "A" to the Declaration of Alan I. Nahmias submitted herewith. A review of Exhibit "A" makes it quite clear that the Defendants intentionally and voluntarily allowed their defaults to be entered, eliminates any argument as to whether their conduct was culpable under the Kistler analysis.

///

///

**B.    The Trustee This Estate, and Its Creditors Would be Prejudiced if the Defaults are Set Aside.**

In addition to their conduct being culpable, setting aside the Defendants' defaults would prejudice the Trustee, this estate, and its creditors.  The Trustee, reasonably believing the Defendants had no intention of contesting this adversary proceeding, requested entry of the defaults of the Defendants.  Thereafter, the Trustee's counsel has spent numerous hours reviewing evidence and preparing the voluminous pleadings seeking entry of default judgments against them.  At this juncture, after Defendants' knowingly waited in excess of four (4) months to seek the relief they appear to be seeking, were the Court to now set the default aside, the estate would bear the cost of Applicant's counsel spending numerous additional hours and thousands of additional dollars in legal fees in connection with pursuing the revocation of their discharges.  To the extent this Court might even entertain such a farfetched concept, which Applicant would strongly oppose, Applicant believes that Defendants should be required to fully reimburse the estate for all of the expenses it has incurred to date in connection with this Application, <u>before</u> it would vacate the Defendants' defaults.

The Defendants' knowing failure to take action to defend against this action, which seeks the most severe of civil remedies allowed under the Bankruptcy Code, once again demonstrates the lack of seriousness with which they have treated the entire bankruptcy process.  From admitting under oath that they reviewed their Petition for a brief few minutes, to not carefully checking the information contained therein, to now seeking to place blame for their plight upon Applicant for not examining them or their Petition more thoroughly, to not even addressing the issue of seeking out counsel to assist them in this adversary on a pro bono basis, or otherwise borrowing funds from family members or friends to pay for legal representation, the Debtors only now have come to the recognition that they are in very serious trouble and are looking for this Court to throw them the equivalent of a legal life raft.

Had the facts been different and Defendants not known of the adversary proceeding for some time, perhaps a different outcome might be justified.  However, based upon Defendants' admitted knowledge of the adversary proceeding and written correspondence advising the Trustee

5

of their intent not to contest the adversary proceeding, as well as Applicant's reliance thereon, for this Court to now set aside their defaults, after the Estate's expenditure of considerable time and great expense pursing entry of a default judgment, would be unfairly prejudicial to the Trustee and the estate and likely result in a decreased distribution to creditors.

C. **No Meritorious Defense**

A careful review of the Opposition demonstrates that the Debtors' believe their best argument against the revocation of their discharge is to convince this Court that if Applicant only did his job better, the numerous and glaring misrepresentations found in the Petition and Statement of Affairs would have been caught and their discharge saved. Applicant will further address this issue below in his Reply to the Defendants' Opposition to the Trustee's Application for Entry of Default Judgment. However, Applicant believes that, after reviewing all the evidence, the Court will have little difficulty determining that Defendants have not raised, nor can they assert, anything that even resembles a meritorious defense, and will as a result, revoke their discharges.

IV.

**Defendants Have Not Provided Sufficient Evidence to Rebut**

**the Trustee's Argument for Entry of Default Judgment.**

Defendants state in their Opposition that the Trustee has made false and inaccurate statements in his Application for Entry of Default Judgement. However, as is clear from the Application, and as will be addressed below, all representations are truthful and accurate, as well as supported by admissible evidence, often in the form of more than one source.

A. **The Farms Golf Membership.**

The Farms is an exclusive, members-only golf club located in Rancho Santa Fe, California. Defendants argue that this was not an asset of theirs, but rather belonged to Client Benefit Insurance Services ("CBIS"), a business owned by Jeff Welty. What Defendants fail to reveal to this Court is that Mr. Welty is the brother of Victoria Salomon. Further, if The Farms membership was truly an asset of CBIS, then the Defendants should not have identified it as belonging to them and valuing it at $45,000.00 in their Individual Financial Statement, as they did when seeking to convince a lender that they were worthy of a loan approximately one year prior to filing their

1  Bankruptcy Petition.  Through their sworn Rule 2004 exam testimony, both Debtors have admitted
2  signing the Financial Statement and submitting it to Canyon National Bank in connection with a
3  loan they were seeking, approximately one year before filing their Bankruptcy Petition.  A copy of
4  the Debtors' Financial Statement, clearly evidencing the Debtors' claim of ownership, is attached
5  to the transcript of the Rule 2004 of Victoria Y. Salomon, filed in support of the Trustee's
6  Application.  Further, had the membership truly belonged to CBIS, The Farms would have sent the
7  proceeds from the sale of the membership to Mr. Welty's company rather than to Steven Salomon.
8  This did not occur, nor did Mr. Welty even communicate with The Farms about the sale.  Rather,
9  all communications were through Steve Salomon, the owner of the membership.

10  The evidence before this Court supports only one conclusion:  the Trustee's assertion that
11  Membership Number 701 in The Farms Country Club was an asset of the Debtors at the time they
12  filed their bankruptcy case, which they failed to schedule in their Petition, and which they sold,
13  post-petition, without notifying or turning over the proceeds to the Trustee.

14  **B.    Sale Proceeds from Calle Hueneme Property.**

15  When asked about the sale proceeds at her 2004 Examination, Victoria Salomon
16  acknowledged that the $51,000.00 figure in her Statement of Financial Affairs was incorrect.  (See
17  page 135, lines 11-25; page 136, lines 1-2.)  Defendants are now attempting to make a distinction
18  between gross and net proceeds.  Had they truly been concerned about such a distinction, they
19  should have included a detailed explanation in their Petition rather than waiting to be called upon
20  to correct the misstatement.

21  **C.    Income for the Years 2003 Through 2005.**

22  The Defendants admit that paragraph 1 of their Statement of Financial Affairs was
23  incorrect with respect to their net income for the years 2003 through 2005.  However, they shirk
24  responsibility, and with audacity not typically seen by parties appearing before this Court, blame
25  the Trustee for not properly reviewing their Petition in hopes of shifting this Court's focus away
26  from their fraudulent conduct.  Applicant has appeared before this Court on numerous occasions
27  over many years in his capacity as a panel Trustee, believes this Court is aware of Applicant's
28  integrity and attention to detail, and sees no further need to defend against such an outrageous and

7

self-serving contention.

Such an argument, while admittedly novel, is made by obviously desperate Debtors, with no legal support, and borders on being ridiculous. More importantly, it is simply untrue. A review of the audio transcript of the Debtors' November, 2005 341(a) exam demonstrates that Applicant spent in excess of twenty-two 22 minutes painstakingly examining the Debtors about the information contained in their Petition, which the Debtors again swore under oath was accurate and complete, further confirming at that time that they had carefully reviewed their Petition prior to signing it. As all involved are now well aware, this was far from the truth.

The burden to make sure that Debtors complete their schedules properly is obviously not on the Trustee. Rather it is on the Debtors, and as this Court will recall, Mr. Salomon subsequently testified at his Rule 2004 exam that he reviewed his Schedules in a "half-assed" manner before signing and authorizing his counsel to file them. (See page 24, lines 9-23 of the transcript of Steven H. Salomon's Rule 2004 Examination.)

Additionally, new evidence recently provided to the Trustee strongly demonstrates that while operating their former businesses between the years 2003 through 2005, the Debtors received substantial additional amounts of undisclosed income, which took the form of numerous personal expenses paid by their corporations. Applicant is in the process of analyzing and investigating this information further and may, upon conclusion of such analysis and investigation, take further action which he determines to be appropriate.

**D.    The Transfer and Sale of Plantation Country Club Membership.**

The Defendants' explanation for misunderstanding what a transfer of property was is simply not credible. Having operated several businesses over the years, the Salomons are considered sophisticated business people and should have known what "property" meant. Further, as set forth in the Application for Entry of Default Judgement, both of them clearly knew that Mr. Salomon had sold his golf membership at Plantation. To represent that they didn't know that a golf club membership is personal property is disingenuous, and the fact that it was sold prior to the bankruptcy, as the Debtors assert, is irrelevant. The funds they received from the sale were not disclosed as income in their Statement of Financial Affairs, and if they were truly uncertain as to

what they should have disclosed, they could have inquired of their own counsel at the time their Petition was being prepared.

**E.** **Jewelry.**

Defendants claim they did nothing wrong because they did not undervalue the jewelry. However, Applicant does not allege that they undervalued the jewelry, but rather that the insurance proceeds Defendants received as a result of the Defendants' loss exceeded their claim of exemption by $1,500.00. This sum was property of the bankruptcy estate, and they failed to turn any portion of it over to the Trustee or make any effort to notify him of their receipt of same. Again, if they had a question as to whether it should have been declared, the Defendants could have contacted their counsel for advice, but failed to do so.

**F.** **Household Furnishings.**

Contrary to the Debtors' assertions, the statements made by the Trustee were not false. As set forth in the Application for Entry of Judgment, the Defendants claim $2,500.00 in furnishings as exempt, but admittedly sold furnishings for a total of $3,000.00, an amount exceeding their exemption. As with the jewelry, Defendants failed to report, account for, or turn over these excess proceeds to the Trustee, or contact their own counsel for advice on how to proceed.

**G.** **Canyon National Bank Checking Account.**

The statements made by the Trustee with respect to Defendants' Canyon National Bank checking account are also completely accurate and truthful. The bank statements to which the Trustee refers in his Application speak for themselves, and reflect that two days prior to the bankruptcy filing, the balance in the Debtors' checking account was $974.49. No withdrawals were registered on the statement prior to the filing date, and the Debtors certainly should have known that they were obligated to accurately report the balance in their account. They have admitted, however, to not even checking their account balance just prior to the time they filed. (See Transcript of Rule 2004 Examination of Victoria Y. Salomon, page 36, lines 6 - 9.)

**H.** **Defendants' Valuation of Furniture In Their Personal Financial Statement.**

Defendants assert that the Trustee's allegation that they concealed, sold or otherwise transferred furniture prior to their bankruptcy filing is false. When making that allegation,

9

however, the Trustee simply compared the Debtors' Personal Financial Statement with their bankruptcy schedules, noting that approximately one year prior to the filing, furniture was valued at $100,000.00 in their Individual Financial Statement, while furniture was valued at $4,500.00 in their bankruptcy schedules. (See exhibits to the 2004 Examination of Victoria Salomon.) Logically, within the year prior to the bankruptcy filing, Defendants either sold, concealed or transferred personal property, or they lied on their Personal Financial Statement. Either way, misrepresentations were made, the Debtors' credibility is further called into question, and they have not offered a plausible explanation for the conflicting valuations.

I.   **Transfer of Clock.**

In Victoria Salomon's 2004 Examination transcript, filed with the Court in support of the Trustee's Application for Entry of Default Judgment, at pages 149 through 153, she testifies that her mother transferred the clock to her approximately six years ago, that the clock was purchased for in excess of One Thousand Dollars ($1,000.00) some time ago, and that the clock was large in size, taking up the better part of an entire wall. She further testified that she transferred that clock to her brother approximately two years ago when she relocated out of state, and because of its size chose not to move it to Massachusetts. Written demands made upon her brother to turn over the clock have gone unanswered, and written demand regarding a painting believed to have a value of at least $3,500.00 and transferred by Mrs. Salomon to her mother in exchange for the clock, have been met with conflicting accounts of whether the $3,500.00 painting even exists any longer.

J.   **Wells Fargo Bank Account.**

The Debtors contend that there was no activity in the Wells Fargo bank account within one year of filing the bankruptcy petition. However, in October 2004, one year prior to the bankruptcy filing, the bank statement reflects that deposits and credits for this account totaled $224,680.54, and withdrawals and debits totaled $251,297.06. A true and correct redacted copy of the October 2004 bank statement is attached as Exhibit "B" to the Declaration of Alan I. Nahmias submitted herewith. Even if they believed it was closed when they filed their Petition, as they appear to now maintain, it should have been scheduled as an account closed within one year of the commencement of their case, per Question Number 11 on the Debtors' Statement of Financial

Affairs. It was not.

**K.     Personal Financial Statement.**

On page 5, line 26 of their Opposition, the Debtors assert that there is no mention of The Farms membership in the Individual Financial Statement. However, as has been previously mentioned, the membership is clearly identified as an asset of theirs with a value of $45,000.00. Therefore, it is inconceivable how the Debtors can represent to this Court that there is "no mention of The Farms membership in the alleged personal financial statement", as they do in their Opposition.

**V.**

**The Debtors' Ongoing Lack of Cooperation**

Since first filing this Petition, the Debtors have demonstrated an arrogance along with a sense that the rules applicable to others in bankruptcy proceedings do not apply to them. From omitting or misrepresenting numerous matters in their Petition, to admitting to not carefully reviewing the Petition, to not filing Amendments to correct known inaccuracies, to recklessly filling out, the Debtors' Questionnaire at their 341(a) meeting, to now alternatively attempting to lay blame for their plight at the Trustee's doorstep and asserting that creditor, Steve Greenfield, is the source of all their woes, the Debtors have continuously failed to look inward at their own conduct and accept responsibility for both their actions and inactions.

They have also completely failed to honor their obligation to cooperate with the Trustee, as imposed by 11 U.S.C. §521(3). refusing to respond to any of the various correspondence or phone messages left for them by Applicant's counsel over at least the past two months By way of example, in Paragraph 9 of their joint Declaration, the Debtors state that Kristopher Schulte, Emory Brazell, and Kevin Connors are not "bonafide" creditors. In a letter dated April 11, 2007, as a follow up to sworn testimony given by Steven Salomon, Applicant's counsel asked him to furnish evidence re: payment of he indebtedness to each of these parties. Like all other attempts at communicating with them over the last few months, however, no reply was received. A true and correct copy of Alan I. Nahmias' letter dated April 11, 2007 is attached as Exhibit "C" to Mr. Nahmias' Declaration and incorporated by this reference as though fully set forth herein. Debtors

11

seeking to save their discharge from revocation could reasonably be expected to show contrition and a desire to cooperate with the Trustee appointed to administer their case. Unfortunately for these Debtors, such has not occurred in this case.

## VI.
## **Conclusion.**

As stated in the Trustee's Application for Entry of Default Judgment, there are simply too many inaccuracies, misrepresentations and omissions contained in the Debtors' Bankruptcy Petition or in the feeble explanations offered for this Court to take the Debtors' Opposition seriously. The Debtors have clearly concealed assets from and repeatedly lied to the Trustee. For the reasons stated in the Application, the Trustee submits that the Debtors' request to set aside their defaults should be denied and their discharges revoked.

Dated: June 21, 2007                          PLOTKIN, RAPOPORT & NAHMIAS

                                              By    /s/ Alan I. Nahmias
                                              _____
                                              ALAN I. NAHMIAS
                                              Special Counsel for Chapter 7 Trustee,
                                              Gerald R. Davis

**DECLARATION OF ALAN I. NAHMIAS**

I, ALAN I. NAHMIAS, declare:

1. I am an attorney duly licensed to practice law in the State of California and before this Honorable Court. I am a member of the law firm of Plotkin, Rapoport & Nahmias, special counsel to Gerald H. Davis, Chapter 7 Trustee of the Bankruptcy Estate of Steven H. Salomon and Victoria Y. Salomon.

2. If I were to be called as a witness, I could and would testify to the following facts which are personally known to me.

### SALOMONS' KNOWING LACK OF OPPOSITION TO THE REVOCATION OF DISCHARGE PROCEEDING

3. On January 16, 2007, the Trustee, through Declarant, filed an adversary proceeding against Steven H. Salomon and Victoria Y. Salomon (hereinafter collectively referred to as "Defendants" or "Debtors"), seeking to revoke their discharges pursuant to 11 U.S.C. §727(d)(1) and (2).

4. The Defendants were served with the adversary proceeding, had knowledge of the adversary proceeding, and even notified Applicant of their intention not to oppose the adversary proceeding. A true and correct copy of the letter from Defendants' counsel at the time to Declarant is attached hereto as Exhibit "A" and incorporated herein by this reference. After receipt of this letter, it was the understanding of both Mr. Davis and Declarant that the Defendants would not be opposing or in any way responding to the Trustee's Complaint.

5. After the deadline to respond to the Trustee's adversary proceeding passed, and after receiving notice of the Defendants' intention not to oppose it, the Trustee requested entry of default of the Defendants, which defaults were entered on February 21, 2007. Thereafter, based upon the representations contained in Exhibit "A", and believing that the adversary proceeding would not be contested, a significant amount of time and work was spent reviewing evidence and preparing the Trustee's Application for Entry of Default Judgment, which was filed with this Court on May 14, 2007.

///

### SALOMONS' BANK ACCOUNT

6. In October 2004, one year prior to the bankruptcy filing, the bank statement for Debtors' business, New Balance, reflects that deposits and credits totaled $224,680.54, and withdrawals and debits totaled $251,297.06. A true and correct copy of the redacted October 2004 bank statement is attached hereto as Exhibit "B".

### SALOMONS' ONGOING REFUSAL TO RESPOND
### TO WRITTEN REQUESTS FOR INFORMATION

7. Attached hereto as Exhibit "C" and incorporated by this reference as though fully set forth is a letter dated April 11, 2007 which I caused to be sent to Debtor, Steven Salomon, at his then known address, requesting information as to various payments he testified to making. No response has been received to date.

8. All other attempts Declarant has made over the last few months at contacting both Mr. and Mrs. Salomon through correspondence of voicemail to their respective cell phones have been unsuccessful, as no messages I have left have been returned, nor correspondence I have sent been answered.

### NO OBSCENITIES WERE USED

9. I deny using any foul or otherwise vulgar language at any time with either Defendant.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 21ST day of June, 2007, at Encino, California.

/s/ Alan I. Nahmias
_____
ALAN I. NAHMIAS, Declarant

14